PAUL ALSTON                     1126
GLENN T. MELCHINGER   7135

DENTONS US LLP
1001 Bishop Street, Suite 1800
Honolulu, Hawai`i  96813-3689
Telephone:  (808) 524-1800
Facsimile:  (808) 524-4591
Email:  paul.alston@dentons.com
            glenn.melchinger@dentons.com

Attorneys for Plaintiffs
ZURU INC. and  ZURU (SINGAPORE) PTE LTD.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| ZURU INC. and  ZURU (SINGAPORE) PTE LTD., <br><br> Plaintiffs, <br><br> vs. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, <br><br> Defendants. | Case No. CV 20-00395 JMS-KJM <br><br> **COMPLAINT; SCHEDULE A; SUMMONS IN A CIVIL ACTION** |

# COMPLAINT

Plaintiffs Zuru Inc. and Zuru (Singapore) PTE, Ltd. (collectively "Plaintiffs") hereby allege as follows against the individuals, corporations, limited liability companies, partnerships and unincorporated associations and foreign entities identified on Schedule A attached hereto (collectively, "Defendants"):

## INTRODUCTION:
## DEFENDANTS' COUNTERFEITING AND WILLFUL INFRINGEMENT

1.      Plaintiffs file this action to combat online counterfeiters who trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff Zuru (Singapore) PTE, Ltd.'s ROBO FISH and ROBO ALIVE trademarks, which are covered by U.S. Trademark Registration Numbers 4440702 and 5294215 respectively.  The Registrations are valid, subsisting, and in full force and effect.

2.      The Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiffs' products, while selling inferior imitations of Plaintiffs' products.  The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.  Defendants attempt to avoid liability by

1

going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation.

3.     Plaintiffs are forced to file this action to combat Defendants' counterfeiting of Plaintiffs' registered trademarks, as well as to protect unknowing consumers from purchasing unauthorized ROBO FISH and ROBO ALIVE products over the Internet.  Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademark as a result of Defendants' actions and seeks injunctive and monetary relief.

4.     This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Hawai`i and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Hawai`i and in this Judicial District.  In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

**JURISDICTION AND VENUE**

5.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq*., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims that arise under the laws of the State of Hawai`i pursuant to 28 U.S.C.

15805700\000001\115952346\V-1

§ 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over the Defendants as each of the Defendants directly targets consumers in the United States, including Hawai`i, through at least the fully interactive commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Hawai`i residents by operating one or more interactive Internet Stores through which Hawai`i residents can purchase products bearing counterfeit versions of Plaintiff's ROBO FISH and ROBO ALIVE goods.  Each of the Defendants has targeted sales from Hawai`i residents by operating online stores that offer shipping to the United States, including Hawai`i, that accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered trademark to residents of Hawai`i.  Each of the Defendants is committing tortious acts in Hawai`i, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Hawai`i.

15805700\000001\115952346\V-1

## THE PLAINTIFFS

7.      Plaintiff Zuru (Singapore) PTE, Ltd. is a Singapore entity and is the registered owner of the ROBO FISH trademark (U.S. Trademark Registration Number 4440702) and the registered owner of the ROBO ALIVE trademark (U.S. Trademark Registration Number 5294215).

8.      Plaintiff Zuru Inc. is a corporation organized under the laws of the British Virgin Islands and a Hong Kong registered company with offices in Kowloon, Hong Kong.  Plaintiff Zuru Inc. has received an exclusive license and grant of all rights of action for the marks involved herein from Zuru (Singapore) PTE, Ltd.

9.      Plaintiffs Zuru Inc. and Zuru (Singapore) PTE, Ltd. are members of the ZURU Group of companies, which has grown into a diversified global enterprise (collectively, "ZURU").  ZURU has earned an international reputation for quality, reliability and value and is credited for many breakthroughs that have occurred in the toy industry.  ZURU is an exclusive licensee and official source of ROBO FISH and ROBO ALIVE products in the United States, which include the following:



15805700\000001\115952346\V-1



CUTE-SEAS
MAGIC MERMAID

CUTE-SEAS
SWEET SEAHORSE

CUTE-SEAS
TINY TURTLE

ROBO ALIVE JUNIOR
LITTLE CROC

ROBO ALIVE JUNIOR
LITTLE DUCK

ROBO ALIVE JUNIOR
LITTLE FISH

ROBO ALIVE
BLUE TANG FISH

ROBO ALIVE
CLOWN FISH 'N BOWL

ROBO ALIVE
DINO

6



*See* https://roboalive.zuru.com/products/  (*Please Note: The above images are from prior iterations of Plaintiffs' website and may not be current.*)

10. Since August 2011, the ROBO FISH mark is and has been the subject of substantial and continuous marketing and promotion by Plaintiffs. Plaintiffs have and continue to widely market and promote the ROBO FISH mark in the industry and to consumers. Plaintiffs' promotional efforts include — by way of

7

example but not limitation — substantial print media, the ROBO FISH website and social media sites, and point of sale materials.

11.    Since August 2016, the ROBO ALIVE mark is and has been the subject of substantial and continuous marketing and promotion by Plaintiffs. Plaintiffs have and continue to widely market and promote the ROBO ALIVE mark in the industry and to consumers.  Plaintiffs' promotional efforts include — by way of example but not limitation — substantial print media, the ROBO ALIVE website and social media sites, and point of sale materials.

12.    The ROBO FISH and ROBO ALIVE trademarks are distinctive and identify the merchandise as goods from Plaintiffs.  The registrations for the ROBO FISH and ROBO ALIVE trademarks each constitutes *prima facie* evidence of its validity and of Plaintiffs' exclusive right to use the ROBO FISH and ROBO ALIVE trademarks pursuant to 15 U.S.C. § 1057(b).

13.    The ROBO FISH and ROBO ALIVE trademarks qualify as famous marks, as that term is used in 15 U.S.C. §1125(c)(1), and have been continuously used and never abandoned.

14.    Plaintiffs have expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the ROBO FISH and ROBO ALIVE trademark.  As a result, products bearing the ROBO FISH and ROBO

ALIVE trademark are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiffs.

## THE DEFENDANTS

15.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions.  Defendants conduct business throughout the United States, including within Hawai`i and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores.  Each Defendant targets the United States, including Hawai`i and has offered to sell and, on information and belief, has sold and continues to sell counterfeit ROBO FISH and ROBO ALIVE products to consumers within the United States, including Hawai`i and in this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

16.     The success of the ROBO FISH and ROBO ALIVE brands has resulted in counterfeiting.  Plaintiffs have identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as Wish, iOffer and Aliexpress, including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit ROBO FISH and ROBO ALIVE products to consumers in this Judicial District and throughout the United States.  Defendants have persisted in creating the Defendant Internet Stores despite ongoing takedown efforts and other litigation.

9

17.    Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.  According to an intellectual property rights seizures statistics report issued by the Department of Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2013 was over $1.74 billion, up from $1.26 billion in 2012.  Internet websites like the Defendants' Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

18.    Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine ROBO FISH and ROBO ALIVE products.  Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal.  Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.  Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

15805700\000001\115952346\V-1

19.     Plaintiffs never licensed or authorized Defendants to use the ROBO FISH and ROBO ALIVE trademarks, and none of the Defendants are authorized retailers of genuine ROBO FISH or ROBO ALIVE products.

20.     Upon information and belief, Defendants also deceive unknowing consumers by using the ROBO FISH and ROBO ALIVE trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for ROBO FISH and ROBO ALIVE products.  Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores' listings show up at or near the top of relevant search results and misdirect consumers searching for genuine ROBO FISH and ROBO ALIVE products.  Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down.  As such, Plaintiffs also seek to disable Defendant Domain Names owned by Defendants because those domains are the means by which the Defendants could continue to sell counterfeit ROBO FISH and ROBO ALIVE products into this District.

21.     Defendants go to great lengths to conceal their identities.  They often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.  For example, many of Defendants' names

and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states.  Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information.  Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses.  Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

22.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.  For example, some of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names.  In addition, the counterfeit ROBO FISH and ROBO ALIVE products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit ROBO FISH and ROBO ALIVE products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

23.     The Defendant Internet Stores also include other notable common

features, including use of the same domain name registration patterns, unique

shopping cart platforms, accepted payment methods, check-out methods, meta

data, illegitimate SEO tactics, HTML user-defined variables, domain redirection,

lack of contact information, identically or similarly priced items and volume sales

discounts, similar hosting services, similar name servers, and the use of the same

text and images.

24.     In addition to operating under multiple fictitious names, Defendants in

this case, just like defendants in other similar cases against online counterfeiters,

use a variety of other common tactics to evade enforcement efforts.  For example,

counterfeiters like Defendants will often register new domain names or online

marketplace accounts under new aliases once they receive notice of a lawsuit.[1]

Counterfeiters also often move website hosting to rogue servers located outside the

United States once notice of a lawsuit is received.  Rogue servers are notorious for

ignoring take down demands sent by brand owners.[2]  Counterfeiters also typically

ship products in small quantities via international mail to minimize detection by

---

[1] https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites")(last visited Sept. 15, 2020)

[2] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings.  https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited Sept. 15, 2020).

U.S. Customs and Border Protection.  A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

25.    Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.  Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.  Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

26.    Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the ROBO FISH and ROBO ALIVE trademark in connection with the advertisement, distribution, offering for sale, and sale of counterfeit ROBO FISH and ROBO ALIVE products into the United States and Hawai`i over the Internet.  Each Defendant Internet Store offers shipping to the United States, including Hawai`i and, on information and belief, each Defendant has offered to sell counterfeit ROBO FISH and ROBO ALIVE

products into the United States, including Hawai`i.

27.     Defendants' use of the ROBO FISH and ROBO ALIVE trademarks in connection with the advertising, distribution, offering for sale, and sale of counterfeit ROBO FISH and ROBO ALIVE products, including the sale of counterfeit ROBO FISH and ROBO ALIVE products into Hawai`i, is likely to cause, and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. § 1114)

28.     Plaintiffs repeat and incorporate by reference herein its allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

29.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered ROBO FISH and ROBO ALIVE trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The ROBO FISH and ROBO ALIVE trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Plaintiffs' products provided under the ROBO FISH and ROBO ALIVE trademarks.

30.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and

advertising products in connection with the ROBO FISH and ROBO ALIVE trademarks without Plaintiffs' permission.

31.     Plaintiff Zuru (Singapore) PTE, Ltd. is the registered owner of the ROBO FISH and ROBO ALIVE trademarks, which are covered by U.S. Trademark Registration Numbers 4440702 and 5294215 respectively.

32.     Plaintiff Zuru Inc. is an exclusive licensee and official source of ROBO FISH and ROBO ALIVE products with rights to prosecute infringement of those marks.  The U.S. Registrations for the ROBO FISH and the ROBO ALIVE trademarks (Exhibits 1 and 2) are in full force and effect.  Upon information and belief, Defendants have knowledge of Plaintiffs' rights in the ROBO FISH and ROBO ALIVE trademarks and are willfully infringing and intentionally using counterfeits of the ROBO FISH and ROBO ALIVE trademarks.  Defendants' willful, intentional, and unauthorized use of the ROBO FISH and ROBO ALIVE trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

33.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, & 1117.

34.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement,

promotion, offering to sell, and sale of counterfeit ROBO FISH and ROBO ALIVE products.

35.     Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known ROBO FISH and ROBO ALIVE trademarks.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36.     Plaintiffs repeat and incorporate by reference herein its allegations contained in the above paragraphs as if fully set forth herein.

37.     Defendants' promotion, marketing, offering for sale, and sale of counterfeit ROBO FISH and ROBO ALIVE products have created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' counterfeit ROBO FISH and ROBO ALIVE products by Plaintiffs or their assignors.

38.     By using the ROBO FISH and ROBO ALIVE trademarks in connection with the sale of counterfeit ROBO FISH and ROBO ALIVE products, Defendants create a false designation of origin and misleading representations of fact as to the origin and sponsorship of the counterfeit ROBO FISH and ROBO ALIVE products.

17

39.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit ROBO FISH and ROBO ALIVE products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

40.     Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## VIOLATION OF HAWAI`I UNIFORM DECEPTIVE TRADE PRACTICES ACT (Haw. Rev. Stat. Ch. 480)

41.     Plaintiffs repeat and incorporate by reference herein its allegations contained in the above paragraphs as if fully set forth herein.

42.     Defendants have engaged in acts violating Hawai`i law including, but not limited to, passing off their counterfeit ROBO FISH and ROBO ALIVE products as those of Plaintiffs, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine ROBO FISH and ROBO ALIVE products, representing that their products have Plaintiffs' approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

43.     The foregoing Defendants' acts constitute a willful violation of the

15805700\000001\115952346\V-1

Hawai`i  Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 480-1 *et seq*., and are both unfair competition and deceptive.

44.    Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputation and goodwill.  Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## COUNT IV
## VIOLATION OF HAWAI`I UNIFORM DECEPTIVE TRADE PRACTICE ACT (Haw. Rev. Stat. Ch. 481A)

45.    Plaintiffs repeat and incorporate by reference herein its allegations contained in the above paragraphs as if fully set forth herein.

46.    Defendants' aforesaid actions involve:  passing off goods as those of Plaintiffs'; causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, Plaintiffs; representing, through use of identical marks, that the goods for sale on Defendant Internet Stores have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have, and have engaged in other conduct that has created and continues to create a likelihood of confusion or of misunderstanding.

47.    Defendants aforesaid conduct has caused harm to Plaintiffs, including

19

various irreparable harm, which entitles Plaintiffs to injunctive and other equitable relief set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

A.      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily preliminarily, and permanently enjoined and restrained from:

1)      Using the ROBO FISH and ROBO ALIVE trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine ROBO FISH and ROBO ALIVE product or is not authorized by Plaintiffs to be sold in connection with the ROBO FISH and ROBO ALIVE trademarks;

2)      Passing off, inducing, or enabling others to sell or pass off any product as a genuine ROBO FISH and ROBO ALIVE product or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the ROBO FISH and ROBO ALIVE trademarks;

20

3)      Committing any acts calculated to cause consumers to believe that Defendants' counterfeit ROBO FISH and ROBO ALIVE products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

4)      Further infringing the ROBO FISH and ROBO ALIVE trademarks and damaging Plaintiffs' goodwill;

5)      Otherwise competing unfairly with Plaintiffs in any manner;

6)      Shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any Plaintiffs trademark, including the ROBO FISH and ROBO ALIVE trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

7)      Using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit ROBO FISH and ROBO ALIVE products; and

8)      Operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are

21

involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the ROBO FISH and ROBO ALIVE trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine ROBO FISH and ROBO ALIVE product or not authorized by Plaintiffs to be sold in connection with the ROBO FISH and ROBO ALIVE trademarks; and

B.      That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph A, 1) through 8), above;

C.      Entry of an Order that, the registrant of the Defendant Domain Names shall be changed from the current registrant to Plaintiffs, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Plaintiffs' selection, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to a registrar of Plaintiffs' selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

D.      Entry of an Order that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including any online

marketplaces such as iOffer and Alibaba Group Holding Ltd., Alipay.com Co., Ltd. and any related Alibaba entities (collectively, "Alibaba"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall:

       1)    Disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit ROBO FISH and ROBO ALIVE products using the ROBO FISH and ROBO ALIVE trademarks, including any accounts associated with the Defendants listed on Schedule A;

       2)    Disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit ROBO FISH and ROBO ALIVE products using the ROBO FISH and ROBO ALIVE trademarks; and

       3)    Take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index; and

       E.    That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the ROBO FISH and ROBO ALIVE

15805700\000001\115952346\V-1

trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

      F.     In the alternative, that Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the ROBO FISH and ROBO ALIVE trademarks;

      G.     That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

      H.     Award any and all other relief that this Court deems just and proper.

      Dated:  Honolulu, Hawai`i, November 22, 2020.

           /s/ Glenn T. Melchinger
PAUL ALSTON
GLENN T. MELCHINGER

Attorneys for Plaintiffs
Zuru Inc. and Zuru (Singapore) PTE, Ltd.

15805700\000001\115952346\V-1