IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ZURU (SINGAPORE) PTE, LTD. & ZURU INC., <br><br> Plaintiffs, <br><br> vs. <br><br> INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, & UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, <br><br> Defendants. | CIV. NO. 20-00395 JMS-KJM <br><br> ORDER DENYING PLAINTIFF'S EX PARTE MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, TEMPORARY TRANSFER OF DEFENDANT DOMAINS, TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND ELECTRONIC SERVICE OF PROCESS/PUBLICATION, ECF NO. 23 |

**ORDER DENYING PLAINTIFFS' EX PARTE MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, TEMPORARY TRANSFER OF DEFENDANT DOMAINS, TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND ELECTRONIC SERVICE OF PROCESS/ PUBLICATION, ECF NO. 23**

## I. INTRODUCTION

This case concerns the alleged production and online sale of counterfeit Robo Fish and Robo Alive products (collectively "Robo Fish")—robotic fish and animal toys developed and trademarked by Plaintiffs Zuru (Singapore) PTE, Ltd. ("Zuru Singapore") and Zuru Inc. (collectively "Plaintiffs"). ECF No. 21 at PageID ## 118-20. Plaintiffs seek an ex parte temporary restraining

order ("TRO") against Defendants, alleged counterfeiters, that would enjoin their infringing activities, transfer domain names associated with Defendants' online stores to Plaintiffs, and freeze Defendants' assets. ECF No. 23 at PageID # 161 ("ex parte TRO Motion"). In addition, "as part of the [ex parte] TRO," Plaintiffs request expedited discovery and authorization to serve process electronically. *Id.* at PageID # 162. Plaintiffs have not met Federal Rule of Civil Procedure 65(b)'s stringent requirements for issuance of a TRO without notice. Accordingly, Plaintiff's ex parte TRO Motion is DENIED.[1]

## II. **BACKGROUND**

Plaintiffs Zuru Singapore and Zuru, Inc. are members of the Zuru Group of companies ("Zuru"), a "global enterprise" that manufactures and sells

---

[1] Although it is not necessary to reach the issue at this time, the court also has concerns about whether personal jurisdiction exists under either Hawaii law or the federal long-arm statute, Fed. R. Civ. P. 4(k). In trademark cases, Ninth Circuit courts evaluate personal jurisdiction using the purposeful direction test, which requires, among other things, that defendants have "expressly aimed" their conduct specifically at the forum. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069-71 (9th Cir. 2017) (explaining that under the express aiming prong of the purposeful direction test the plaintiff must show that the forum was the "focal point" of both the claims and the harm suffered) (citing *Walden v. Fiore*, 571 U.S. 277, 287 (2014)). And "[d]istrict courts have declined to find express aiming based on alleged sales of products that infringe intellectual property rights through commercial, interactive websites accessible to [the forum's] consumers." *Graco Minnesota Inc. v. PF Brands, Inc.*, 2019 WL 1746580, at *4 (S.D. Cal. Apr. 17, 2019) (collecting cases); *see also, e.g.*, *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1189 (D. Or. 2016) (explaining that an interactive, commercial website did not provide a sufficient basis for personal jurisdiction where there was no evidence of transactions with forum residents or evidence that the forum was targeted) (citing *Millennium Enters., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 923 (D. Or. 1999)); *Adobe Sys. Inc. v. Trinity Software Distrib., Inc.*, 2012 WL 3763643, at *6 (N.D. Cal. 2012) (same).

toys to an international market, including in the United States. ECF No. 21 at PageID # 117. Zuru is the exclusive licensee and official source of Robo Fish products in the United States. *Id.* Plaintiff Zuru Singapore is the registered owner of the Robo Fish and Robo Alive trademarks. *Id.* And Plaintiff Zuru Inc. has "received an exclusive license and grant of all rights of action for the marks involved herein" from Zuru Singapore. *Id.* Plaintiffs have been promoting, marketing, and selling Robo Fish toys worldwide since 2011 and Robo Alive toys since 2016. *Id.* at PageID ## 120-21.

On November 22, 2020, Plaintiffs filed an Amended Complaint against a number of Defendants, alleging trademark infringement and false designation of origin in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and violations of the Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes ("HRS") Ch. 480, 481A. ECF No. 21 at PageID ## 128-33. Along with the Amended Complaint, Plaintiffs filed the Motion currently before the court: the "Ex Parte Motion for Entry of Temporary Restraining Order, Temporary Transfer of Defendants Domains, Temporary Asset Restraint, Expedited Discovery, and Electronic Service of Process/Publication," ECF No. 23.[2]

---

[2] Plaintiffs filed their initial Complaint on September 16, 2020, ECF No. 1. The names of Plaintiffs, Defendants, and the products at issue were redacted in that Complaint. Subsequently,
(continued)

In their Amended Complaint and ex parte TRO Motion, Plaintiffs allege that Defendants are individuals and business entities based in China who sell counterfeit Robo Fish products to consumers via the internet. ECF No. 21 at PageID # 122; ECF No. 23 at PageID # 198.[3] Plaintiffs have "identified numerous domain names" as belonging to Defendants and from which Defendants allegedly sell counterfeit Robo Fish products. ECF No. 23 at PageID # 164. Each of these domain names appear to be linked to marketplace listings on third-party platforms, namely, Ebay, Amazon, Wish, Aliexpress, and DHgate.com. *See generally* ECF Nos. 23-2 through 23-13 (screenshots of Defendants' internet stores). Plaintiffs allege that "[e]ach Defendant Internet Store offers shipping to the United States, including Hawaii and . . . has offered to sell counterfeit [Robofish] products into the United States, including Hawaii." ECF No. 21 at PageID ## 127-28.

---

Plaintiffs moved to proceed temporarily under pseudonym and to file identifying information under seal, ECF Nos. 7, 10, 16. This request was denied without prejudice because Plaintiffs failed to show that such protection was warranted. *See* ECF No. 17. Plaintiffs then filed the Amended Complaint and ex parte TRO Motion, along with a Motion to temporarily file the TRO Motion, certain exhibits identifying Defendants, and any order ruling on the TRO Motion under seal, ECF No. 24. The court granted the Motion to Seal with respect to the exhibits and denied the Motion to Seal with respect to the TRO Motion, ECF Nos. 27 & 29. For the same reasons that the court denied the Motion to Seal with respect to the TRO Motion, the court now DENIES the Motion to Seal with respect to this Order.

[3] In the Amended Complaint, Plaintiffs allege that Defendants are residents of China or "other foreign jurisdictions." ECF No. 21 at PageID # 122. But in their ex parte TRO Motion, Plaintiffs state that they "have cause to suspect the [Defendants] are all residents of China." ECF No. 23 at PageID # 198.

Plaintiffs further allege that Defendants facilitate counterfeit sales by designing their internet stores to appear to be authorized retailers of authentic Robo Fish products, including through image and design elements that "make it very difficult for consumers to distinguish such counterfeit sites from an authorized website." ECF No. 23-1 at PageID # 204-05; ECF No. 23-19 at PageID # 1054. "Defendants . . . perpetuate the illusion of legitimacy" by offering live customer service, and by incorporating "indicia of authenticity and security that consumers have come to associate with authorized retailers," including McAfee Security, Verisign, Visa, MasterCard, and PayPal logos. ECF No. 23 at PageID ## 165-66. And, Plaintiffs allege, Defendants use social media spamming and search engine optimization tactics to ensure their internet store listings show up at or near the top of search results for Robo Fish products, thereby diverting consumers searching online for genuine Robo Fish. *Id.* at PageID # 166.

Finally, Plaintiffs allege that "Defendants go to great lengths to conceal their identities," in order to avoid legal action and other efforts to counteract their counterfeiting. *Id.* at PageID # 167. For example, they use random, incomplete, or fictitious names and addresses to register and operate their online stores, or else use privacy services to conceal their identities. *Id.* Further, Plaintiffs allege that "counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice

of a lawsuit" and will "move website hosting to rogue servers located outside the United States once notice of a lawsuit is received." ECF No. 23-1 at PageID # 207; ECF No. 23-19 at PageID # 1056; ECF No. 23-20 at PageID # 1062-63. Likewise, "counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation" in spite of any enforcement efforts taken against them. ECF No. 23 at PageID # 169. "Upon information and belief" Plaintiffs aver that Defendants in this case maintain offshore bank accounts and regularly move the profits of their counterfeiting activities from their PayPal accounts to these offshore accounts, and thus beyond the jurisdiction of United States courts. *Id.*

Plaintiffs explain that they and their affiliates have "already sued such online stores to enforce the [Robo Fish] marks for years, only to have a multiplicity of stores spring up yet again." *Id.* at PageID # 172. In support of this statement, Plaintiffs cite to a single case filed against counterfeiters in the Northern District of Illinois in 2019, in which "the same relief sought herein was granted." *Id.*; ECF No. 16-2. Despite this favorable ruling, "more online stores have again sprung up." ECF No. 23 at PageID # 172.

Plaintiffs now seek ex parte relief. Specifically, they ask the court to issue an ex parte TRO that would (1) enjoin Defendants' counterfeiting activity; (2) transfer Defendants' domain names to Plaintiffs; and (3) restrain "certain of

Defendants' assets." ECF No. 23 at PageID ## 187-90. As part of the TRO, Plaintiffs also seek (4) expedited discovery to "discover bank and payment system accounts that the Defendants use for their counterfeit sales and operations" in order to facilitate the requested asset restraint; and (5) authorization to serve process on Defendants electronically. *Id.* at PageID ## 191-95.

### III.  DISCUSSION

Federal Rule of Civil Procedure 65(b) provides that a TRO may be granted ex parte only if (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(A)-(B); *see also Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130-31 (9th Cir. 2006). Rule 65(b)'s requirements are "stringent," reflecting the fact that American legal principles "run[] counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 438-39 (1974). And while ex parte TROs are "necessary in certain circumstances" they "should be restricted to serving their

underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Id.*

Where, as here, notice could have been given to the adverse party,[4] "courts have recognized 'a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action.'" *Reno Air Racing*, 452 F.3d at 1131 (quoting *Mansukhani*, 742 F.2d at 322). In trademark cases, courts have limited the grant of such ex parte TROs to cases where the plaintiff demonstrates that an alleged infringer is likely to dispose of the infringing goods before the hearing. *Id.*; *see also, e.g.*, *In the Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979); *Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1094 (N.D. Cal. 2012); *Gucci Am., Inc. v. Los Altos Boots, Inc.*, 2014 WL 12561613, at *3 (C.D. Cal. Aug. 27, 2014); *Trendtex Fabrics, Ltd. v. Hula Batik Int'l Inc.*, 2017 WL 2903344, at *2 (D. Haw. May 1, 2017).

---

[4] An ex parte TRO may be appropriate "'where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.'" *See Reno Air Ass'n*, 452 F.3d at 1131 (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)). Here, Plaintiffs do not argue that it would be impossible to give notice to Defendants. They only argue that "notice to the defendant would render further prosecution fruitless." ECF No. 23 at PageID ## 171-72 (quotation and citation omitted). Further, Plaintiff's attorney has not "certified in writing" any attempts to notify Defendants as required by Rule 65(b)(1)(B), and the only reason he certifies as to why notice should not be required is that notice would render further prosecution fruitless. ECF No. 23-20 at PageID ## 1062-63 ("Once notice of a lawsuit is received, counterfeiters frequently move website hosting to rogue servers located outside the United States and/or begin redirecting traffic to a different, newly created domain name and not named in the corresponding lawsuit.").

To justify an ex parte TRO on this ground, the plaintiff "'must do more than assert that the adverse party would dispose of evidence if given notice.'" *Reno Air Racing*, 452 F.3d at 1131 (quoting *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993)). "[P]laintiffs must show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing and *must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history*." *Id.* (emphasis added) (quoting *Depinet*, 11 F.3d at 650-51) (alterations omitted). "Conclusory statements by the applicant's counsel" that the defendants are likely to evade prosecution are insufficient to satisfy this requirement. *SATA GmbH & Co. Kg. v. Wenzhou New Century Int'l, Ltd.*, 2015 WL 6680807, at *4 (C.D. Cal. Oct. 19, 2015).

A plaintiff can demonstrate that a defendant has a history of evading prosecution in this manner by pointing to specific examples of such evasion in the past. *See, e.g.*, *Vuitton*, 606 F.2d at 2 (upholding ex parte TRO based on petitioner's showing of eighty-four previous actions against the same counterfeiters, all of which were rendered ineffectual because counterfeiters transferred inventories to members of "closely-knit distribution networks" before the court could hold a hearing); *Talavera Hair Prod., Inc. v. Taizhou Yunsung*

9

*Elec. Appliance Co., Ltd*, 2018 WL 3413866, at *3 (S.D. Cal. May 10, 2018) (permitting ex parte TRO where defendants had already violated a court order issued against them in China and ignored numerous cease and desist letters sent by plaintiffs).

And increasingly in the realm of online counterfeiting, courts have permitted TROs to proceed ex parte upon a showing that "persons similar to the adverse party" have a history of disposing of evidence or violating court orders. *See, e.g.*, *Gucci*, 2014 WL 12561613, at *3-4 (holding that plaintiff luxury goods manufacturer had met the "persons similar" standard for an ex parte TRO—despite not showing that the defendant had a history of evading prosecution—by pointing to specific instances of such evasions by counterfeiters who sold similar counterfeit luxury goods and whose operations were "similar in scope and duration to Defendant's"); *SATA*, 2015 WL 6680807, at *4-5 (allowing TRO to proceed ex parte based on evidence presented by a private investigator detailing his fourteen years' experience investigating counterfeiters, including the defendant, as well as "evidence that [two] similarly situated California defendants in trademark infringement cases have ignored orders to preserve evidence upon the court's denial of a request for an ex parte TRO.").

But "conclusory statements" regarding the propensity of counterfeiters in general to engage in evasive tactics is insufficient to meet Rule

10

65(b)(1)'s "stringent" standard.  *See Rovio Entertainment*, 907 F. Supp. 2d at 1094, 1096-97 (rejecting application for ex parte TRO where plaintiff merely put forth evidence that defendants took "deliberate steps to conceal their infringing business activities" in order to avoid enforcement action and "generally assert[ed] that the propensity of infringers to conceal infringing items if they are given notice of an application for a temporary restraining order or seizure is well-documented") (quotation and brackets omitted); *Hand & Nail Harmony, Inc. v. ABC Nail & Spa Prods.*, 2016 WL 9110163, at *3-4 (C.D. Cal. May 31, 2016) (rejecting application for ex parte TRO against Vietnamese defendants where plaintiffs declared (1) that "[i]n [their] experience, [Vietnamese] counterfeiter[s] will often relocate or change the name of the business after receiving notice of a lawsuit," but without providing "specific reasons as to why this may be the case here or point[ing] to specific instances in which this has occurred in the past"; and (2) that the defendants had evaded a prior lawsuit, but without providing "any details" about that case); *Starbuzz Tobacco, Inc. v. Namou*, 2013 WL 3353851, at *3-4 (S.D. Cal. July 2, 2013) (denying application for ex parte relief where plaintiffs declared that "[i]n [their] experience, accused infringers served with notice of an application for a temporary restraining order and/or preliminary injunction will attempt to destroy evidence in their possession in an effort to hide their wrongdoing" but failed to provide evidence that the defendants or persons similar had a history of doing so);

*Versah, LLC v. Ul Amin Indus.*, 2020 WL 6198472, at *3 (E.D. Mich. Oct. 22, 2020) (denying application for ex parte TRO, in part, because the plaintiffs advanced "suspicion[s]" that defendants would evade prosecution rather than "particularized facts . . . explaining why ex parte relief [was] necessary").

Here, Plaintiffs have failed to provide sufficient evidence to meet Rule 65(b)(1)'s requirements. First, Plaintiffs have failed to provide evidence that the Defendants themselves have "a history of disposing of evidence or violating court orders." *Reno Air Racing*, 452 F.3d at 1131. Plaintiff's counsel declares that "prior counsel for Plaintiffs and Plaintiff's predecessors in interest have sued multiple times on multiple marks against hundreds of online stores, but more keep springing up again—such as the ones in this lawsuit." ECF No. 23-20 at PageID # 1062. But like the unsuccessful plaintiffs in *Hand & Nail Harmony*, Plaintiffs fail to provide any specifics about these lawsuits. They do, however, point to one specific lawsuit that Zuru's predecessors in interest filed against counterfeiters in the Northern District of Illinois in 2019. ECF No. 16-2. But Plaintiffs provide no evidence that Defendants disposed of evidence or evaded court orders in the absence of an ex parte TRO. They merely state that an ex parte TRO was granted in that case. ECF No. 23 at PageID # 172; ECF No. 16-2. Thus, the existence of that lawsuit—at least based on the information provided to the court—is largely irrelevant to the issue of whether an ex parte TRO is appropriate under Rule 65(b).

Likewise, Plaintiffs allege that "[d]espite Plaintiffs' enforcement efforts online, Defendants have persisted in creating the Defendant Internet Stores." ECF No. 23-14 at PageID # 1032. But Plaintiffs provide no specifics about what these enforcement efforts entailed or how Defendants evaded them.[5]

Plaintiffs have also failed to provide sufficient evidence that "persons similar" have such a history. Plaintiffs have file declarations from Zuru counsel and investigators, each of which contain *identical* statements that: "online counterfeiters use a variety of . . . common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received." ECF No. 23-1 at PageID # 207; ECF No. 23-19 at PageID # 1056; *see also* ECF No. 23-20 at PageID # 1062 (nearly identical phraseology). But Plaintiffs fail to provide any *facts* to substantiate these statements.[6] In addition, in a footnote, Plaintiffs cite to a

---

[5] Plaintiffs state in general terms that "Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts," ECF No. 23-19 at PageID # 1056, but they provide no "particularized facts" as to past instances in which Defendants evaded Plaintiffs' enforcement actions. *See Versah*, 2020 WL 6198472, at *3.

[6] Moreover, the cookie-cutter statements contained in each declaration suggest that Plaintiffs did not expend much effort in this case to establish any *particularized* facts that would warrant ex parte relief.

13

string of cases involving online counterfeiters—most of which are unpublished and not publicly available—but they do not explain what relevance those cases have to the present matter. ECF No. 23 at PageID # 162 n.1. In particular, Plaintiffs do not provide any facts to suggest that the defendants in those cases engaged in evasive tactics to evade prosecution upon receiving notice of a lawsuit against them. Nor do Plaintiffs provide any facts suggesting that the defendants in those cases are "persons similar" to the Defendants in this case.

In short, Plaintiffs' request for ex parte relief is grounded in generalized, unsubstantiated statements. These statements are insufficient to meet the "stringent" requirements imposed by Rule 65(b).

## IV. <u>CONCLUSION</u>

Plaintiffs have failed to show that ex parte relief is warranted in this case. In addition to seeking an injunction on Defendants' infringing conduct, transfer of Defendants' domain names, and a freeze on Defendants' assets, Plaintiffs also request electronic service and expedited discovery as "part of" the TRO.[7] ECF No. 23 at PageID # 162. Because Plaintiffs request all of this relief

---

[7] Expedited discovery is generally permitted in order to identify unknown defendants. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But Plaintiffs do not appear to seek discovery in order to identify Defendants. Rather, the only basis for expedited discovery Plaintiffs advance is "to discover bank and payment system accounts that the Defendants use for their counterfeit sales and operations" because without such discovery "any asset restraint would be of limited value because Plaintiffs would not know the entities upon whom to serve the order." ECF No. 23 at PageID # 192. The discovery request is thus contingent on the court granting Plaintiff's request for a temporary asset restraint.

under the umbrella of their ex parte TRO application, Plaintiffs' Motion is DENIED in full.  That said, if appropriate, Plaintiffs may file a renewed request for electronic service or expedited discovery with the magistrate judge.

    IT IS SO ORDERED.

    DATED: Honolulu, Hawaii, January 29, 2021



    /s/ J. Michael Seabright
    J. Michael Seabright
    Chief United States District Judge

*Zuru Inc. v. Individuals, Corporations, and Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A*, Civ. No. 20-00395 JMS-KJM, Order Denying Motion for Ex Parte TRO